IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANGEL FIRE RESORT
OPERATIONS, LLC., *et al.*,

    Plaintiffs,

v.                                                       Case No. 01-51-RLP/LFG (ACE)

THE VILLAGE OF ANGEL
FIRE, NEW MEXICO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the court on Defendant Village of Angel Fire's (the "Village") Motion to Dismiss [Doc. 26] and Motion to Dismiss First Amended Complaint [Doc. 37].[1] For the reasons set forth below, these motions will be granted. Also pending before the court are Plaintiffs' (the "Resorts") Motion for Preliminary Injunction [Doc. 33] and the Village's Motion to Strike Amended Complaint and Accompanying Application for Preliminary Injunction [Doc. 39]. Those motions are denied as moot. Finally, the Village previously filed a Motion to Clarify Scope of Evidentiary Hearing [Doc. 35] and then filed its Motion to Withdraw Motion for Clarification [Doc. 46]. The Motion to Withdraw Motion is granted.

In 1997, the Village and the Resorts entered into a 30-year contract comprising two parts: the "Transfer Agreement" and the "Annexation Agreement" (attached as Exhibits A and B to the Complaint, respectively). The Annexation Agreement provides, *inter alia*, that (1) the Village may annex certain of the Resorts' properties; but (2) the Village cannot

---

[1] The Motions to Dismiss are based on lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1) and failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6).

impose moratoria on future real estate development; and (3) the Village agrees not to adopt ordinances that have "material, adverse economic effect or impact on the resort or the development cost or value of the Developed Property." Exhibit B.

The Village is conditioning development of subdivisions by requiring the Resorts to construct a sewer line tie-in. The Resorts maintain that the cost of construction of a sewer line tie-in would render further development too costly given market conditions. The Resorts allege this is a "taking" in violation of their Fifth Amendment rights. In essence, the Resorts argue that all conditions that are not contemplated by their contracts are constitutional takings.[2] They argue that the Village's actions constitute a violation of § 1983 and allege violations of their rights to procedural and substantive due process and equal protection.

After the Village gave its conditional approval to the Resorts plans, the Resorts filed an administrative action in the Eighth Judicial District (County of Colfax) against the Village, apparently bringing the same claims asserted herein. This administrative procedure is pursuant to N.M.S.A. § 39-3-1.1. For reasons not clear to this court, that action was stayed pending the outcome of this case.

Fifth Amendment "takings" require two acts of the governmental entity: a taking and a denial of just compensation. *Miller v. Campbell County*, 945 F.2d 348 (10th Cir. 1991), *cert. denied*, 502 U.S. 1096 (1992). Claims are not ripe until both elements have been

---

[2] The contracts were entered into with the prior Village administration. According to the Resorts, the new administration is hostile to the Resorts and have either stated or implied that the contracts should be renegotiated. The Resorts allege that all of the Village's actions are geared to nonperformance of the contracts in an effort to extort the renegotiation or recission.

2

shown. *Id*. Claims that are not ripe deprive the federal court of subject matter jurisdiction. *E.g., SK Finance SA v. La Plata County*, 126 F.3d 1272 (1997). In this circuit, takings claims which are deemed unripe require dismissal of all other constitutional claims based on the same facts as the takings claim. *Bateman v. City of West Bountiful*, 89 F.3d 704 (10th Cir. 1996).

Having reviewed the submissions of the parties and having heard oral arguments, it appears that the Resorts have failed to show that their takings claim is ripe. This case is similar to *Dakota Ridge Joint Venture v. City of Boulder*, 162 F.3d 1172, 1998 WL 704694 (10th Cir. 1998) (unpublished opinion) (copy attached). Although the decision is unpublished it is instructive on the applicable law.

In *Dakota Ridge*, the Tenth Circuit Court of Appeals upheld the district court's granting of summary judgment in favor of the City. The developer had sought relief under § 1983 alleging various constitutional violations. The district court found that the City's actions were not final and the claims were therefore not ripe. The Tenth Circuit stated:

> Having concluded that Dakota Ridge has not yet obtained a final decision from the City, and that its federal claim is therefore not ripe, we need not here consider whether Colorado law has an adequate inverse condemnation procedure available to Dakota Ridge, which, under *Williamson*, it must also pursue--and has not--before any federal claim is ripe.

*Id*. at *4 (citing *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985)).

From this opinion it is apparent that a landowner must proceed under all of the state's procedural requirements to meet the ripeness requirement of takings claims. First,

3

the landowner must have a final decision from the entity, which is similar to an exhaustion requirement. Second, after that process is completed, then the landowner must have availed itself of the state's inverse condemnation procedure, if any.  The first step determines whether there has been a "taking" and the second step determines whether "just compensation" was denied.  Both results are necessary.

As indicated above, the Resorts have not availed themselves of the procedures available to them.  They brought an action in state court, but are holding that in abeyance due to the filing of this lawsuit.  But that stay is exactly what renders their claims not final.  Thus, as in *Dakota Ridge*, this court need not address the Resorts argument that New Mexico's inverse condemnation statute does not apply to them.

The Resorts have argued that *Williamson* does not apply to their situation and cite two other United States Supreme Court decisions they contend should be applied:  *City of Monterey v. Del Monte Dunes*,  526 U.S. 687 (1999) and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1009 (1992).  The procedural history (as stated the Court) of *Del Monte Dunes* indicates the following.  Over a period of five years, the developer was required to submit 19 different site plans, each one rejected with new conditions.  The developer brought suit in district court alleging, *inter alia*, a Fifth Amendment takings claim. After the district court dismissed the case as unripe, the Ninth Circuit Court of Appeals reversed:

> After reviewing at some length the history of attempts to develop the property, the court found that to require additional proposals would implicate the concerns about repetitive and unfair procedures [citation omitted] and that the city's decision was sufficiently final to render Del Monte Dunes' claim ripe for

> review. [Citation omitted.] The court also found that because the State of California had not provided a compensatory remedy for temporary regulatory takings when the city issued its final denial [citation omitted], Del Monte Dunes was not required to pursue relief in state court as a precondition to federal relief. [Citation omitted.]

526 U.S. at 698-99.

As noted earlier in *Dakota Ridge*, the two step process -- a taking and a denial of just compensation -- was required. Although the *Del Monte Dunes* court did not use this word, it appears that the "futility" exception to the *Williamson* requirements was applied to the developer. The Tenth Circuit has not specifically adopted the futility exception, but it has stated that it could not be invoked unless it is "clear beyond peradventure that excessive delay in such final determination [would cause] the present destruction of the property's beneficial use." *Landmark Land Co. of Oklahoma v. Buchanan*, 874 F.2d 717, 722 (10th Cir. 1989), *abrogated on other grounds by Federal Legal Consortium v. United States*, 195 F.3d 1190 (10th Cir. 1999). The *Del Monte Dunes* developer meets this definition; the Resorts do not.

The Resorts also contend that the *Lucas* decision "trumps" the requirements of *Williamson*. In *Lucas* the defendants argued the claim was not ripe because the landowner had not obtained a final decision regarding how he would develop the property as *Williamson* required. 505 U.S. at 1011. The Court held that this case presented a unique procedural posture. When the landowner purchased the property, their were no restrictions on development. Legislation was then passed that prohibited any development. While the landowner litigated his takings claim in the state court, new

5

legislation was passed to allow special permits for development. The landowner nevertheless continued with his state court claims, ultimately receiving a decision from the South Carolina Supreme Court, which denied his takings claim on the merits. The landowner appealed to the United States Supreme Court and the defendant Council argued the case should be dismissed as unripe for the landowner's failure to seek redress based on the newly-enacted legislation. The Court rejected this argument:

> We think these considerations would preclude review had the South Carolina Supreme Court rested its judgment on ripeness grounds, as it was (essentially) invited to do by the Council. The South Carolina Supreme Court shrugged off the possibility of further administrative and trial proceedings, however, preferring to dispose of Lucas's takings claim on the merits.
> . . .
> In these circumstances, we think it would not accord with sound process to insist that Lucas pursue the late-created "special permit" procedure before his takings claim can be considered ripe.

*Id.* at 1011 & 1012.

In this court's opinion, that language limits, rather than expands, the reach of *Lucas* and in no way supercedes or "trumps" *Williamson's* requirements as the Resorts contend. The court agrees with the Village that the 1992 *Lucas* decision has in no way altered the Tenth Circuit's jurisprudence from that date to the present with regard to ripeness determinations. Nor are the Resorts in the same procedural posture as was the landowner in *Lucas*.

Finally, the Resorts argue that their equal protection claim survives the ripeness inquiry, relying on *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). In *Olech* the Court held that an equal protection claim could be based on a "'class of one,' where the

plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564.

Whether or not an *Olech*-type equal protection claim can confer jurisdiction when combined with a takings claim has not yet been decided in this circuit. As discussed earlier, current Tenth Circuit decisions indicate that *all* federal constitutional claims (except procedural due process alleging differing factual basis) fall with an unripe takings claim. Until that court decides otherwise, this court is bound by that precedent.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [Doc. 26] and Motion to Dismiss First Amended Complaint [Doc. 37] are granted and this case is dismissed without prejudice;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Preliminary Injunction [Doc. 33] is denied as moot;

IT IS FURTHER ORDERED that Defendant's Motion to Strike Amended Complaint and Accompanying Application for Preliminary Injunction [Doc. 39] is denied as moot;

IT IS FURTHER ORDERED that Defendant's Motion to Withdraw Motion for Clarification [Doc. 46] is granted, which removes Defendant's Motion for Clarification [Doc. 35] from consideration.

IT IS SO ORDERED.

Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)